# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6415 | **DATE** | November 4, 2004 |
| **CASE TITLE** | | Annie Burton v. Illinois Student Assistance Commission | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The bankruptcy court's orders of June 24 and July 29, 2003 are affirmed. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| X | Notices MAILED by judge's staff. | | | NOV 05 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to _____ | | | date mailed notice | |
| KAM | courtroom deputy's initials | | | KAM mailing deputy initials | |

Date/time received in central Clerk's Office (Reserved for use by the Court)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ANNIE BURTON,                )
                             )
    Appellant,              )
                             )
v.                           )   No. 03 C 6415
                             )
ILLINOIS STUDENT ASSISTANCE  )
COMMISSION,                  )
                             )
    Appellee.               )

NOV 0 5 2004

## MEMORANDUM OPINION

This case is before us on appeal from two orders of the bankruptcy court: (1) the order of June 24, 2003, granting the appellee Illinois Student Assistance Commission's motion to vacate the order of May 21, 2003; and (2) the order of July 29, 2003, denying appellant Annie Burton's motion to vacate the order of June 24, 2003 and to file a Chapter 13 petition. For the reasons explained below, the bankruptcy court's orders are affirmed.

## BACKGROUND

In 1994, appellant Annie Burton filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code; later that year, the petition was converted to a Chapter 7 proceeding. Burton received a discharge of her debts in that proceeding in December 1994. Burton has a history of filing multiple bankruptcy petitions. According to the Bankruptcy Court docket, Burton has filed nine



petitions for bankruptcy since 1993, and she received a discharge of debts in two of those proceedings (a 1994 case and a 2001 case). Six of the petitions were dismissed, and one is currently pending.

In 1996, appellee Illinois Student Assistance Commission ("ISAC") filed suit against Burton in the Circuit Court of Cook County for defaulted student loans. On November 5, 1997, judgment was entered against Burton in the amount of $25,042.11 plus costs. In February 1998 and March 2002, ISAC instituted wage garnishment proceedings in state court that were dismissed pursuant to bankruptcy petitions that Burton filed before any wage garnishment orders were entered. ISAC tried again in April 2003; this time, a wage deduction order was entered by the state court on April 23, 2003.

Shortly thereafter, on May 2, 2003, Burton filed a motion in federal bankruptcy court to reopen the 1994 bankruptcy proceeding, 94 B 02838. On May 14, 2003, Burton filed an emergency motion to reopen the case. She asserted that ISAC was harassing her by garnishing her wages for student loan debt that had been discharged in bankruptcy. On May 21, the bankruptcy court heard the motion; counsel for ISAC did not appear. The bankruptcy court entered an order granting Burton's motion to reopen the case.

On June 5, 2003, ISAC filed a motion to vacate the May 21 order. ISAC asserted that it had not received proper notice of the motion to reopen the case and that the student loans had not been

discharged. Burton failed to appear for the hearing on the motion on June 24, 2003 (later citing a family crisis). In an order signed on June 24 and entered on the docket on July 14, 2003 (the "June 24 Order"),[1] the bankruptcy court granted ISAC's motion and stated as follows:

> THIS MATTER coming on to be heard, pursuant to Notice and Motion of Illinois Student Assistance Commission ("ISAC") seeking to vacate the Order of May 21, 2003, reopening this matter, due notice having been given to the Debtor, and the Debtor not appearing, the Court does find and order:
> 1. The Motion of Annie Burton, which reopened this cause was presented with insufficient Notice to ISAC;
> 2. The Order of May 21, 2003 is vacated and held for naught and this case remains closed under its original closing date;
> 3. The Court further finds that Annie Burton has abused the process of this Court by the filing of seven (7) bankruptcies under various Chapters since 1993, and that said conduct warrants the imposition of the sanctions sought by ISAC;
> 4. The Debtor, Annie Burton, is barred from filing any further bankruptcies, under any Chapter, or any Motions in any of the prior filed and closed bankruptcies, unless the Debtor first serves an Application for leave to file the aforesaid pleadings before this Court and serves Notice upon Teller, Levit & Silvertrust, P.C., as attorneys for ISAC. Said bar shall be in effect for twelve (12) months.

(June 24 Order.)

On June 26, 2003, Burton filed an emergency motion to vacate the June 24 order. The motion was denied. On July 18, 2003,

---

[1] The parties refer to the orders according to the date on which they were signed by the bankruptcy court (not the date on which they were docketed), and we do so as well for simplicity.

Burton filed a motion for leave to file a motion to vacate the June 24 order. That motion was stricken.

On July 25, 2003, Burton again filed a motion to vacate the June 24 order and also moved for leave to file another Chapter 13 petition. Burton argued that the wage garnishment inflicted undue hardship on her because she was behind in paying rent and could not afford her son's school tuition or food and clothing for him.

On July 29, 2003, the bankruptcy court heard oral argument on Burton's motion. When the court asked about the grounds for the motion, Burton replied that her car was impounded by the City of Chicago. Burton also stated that she was experiencing "[a]bject poverty" due to the wage garnishment. When questioned about the amount owed to ISAC, counsel for ISAC explained its calculation, which included several years of accrued interest, and also pointed out that Burton's salary is approximately $48,000.[2] After it became evident that the parties could not work out any payment arrangement except for the wage garnishment, the bankruptcy court stated that she would deny Burton's motion "because there are no

---

[2] The bankruptcy court responded to this information by questioning Burton about her salary, stating "That's not what you're saying in the papers." Burton acknowledged that the salary figure was correct, but added that it had been her salary "only" since 2000 and that her average yearly income over the past 23 years had been $20,000. (Tr. of Proceedings of July 29, 2003 at 9.) The bankruptcy court apparently was referring to Burton's description of herself (in her motion for leave to file a motion to vacate the June 24 order) as a "member of the working poor class, who has been employed in a clerical position for more than 23 years, and has earned an average income of approximately $20,000 to support her sick mother and son." (Application for Leave to File Motion to Vacate Creditor's June 24, 2003 Order at 4.) Given that Burton made approximately $48,000 a year at a large law firm at that time, we believe that the aforementioned statement was designed to mislead the court.

grounds." (Tr. of Proceedings of July 29, 2003 at 10.) In a written order signed on July 29, 2003 and entered on August 4, 2003 (the "July 29 Order"), the bankruptcy court denied the motion for leave to file a Chapter 13 petition and to vacate the June 24 order, "[f]or the reasons stated in open court." (July 29 Order.)

Burton now appeals the June 24 Order and the July 29 Order.

## **DISCUSSION**

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002); Fed. R. Bankr. P. 8013. The Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The reopening of a closed bankruptcy case is a discretionary matter and is reviewed for an abuse of discretion. See In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991) (citing Hawkins v. Landmark Fin. Co., 727 F.2d 324, 326-27 (4th Cir. 1984)).

Burton raises the following issues for review:

> 1. Whether the court abused its discretion in granting [ISAC] an order to bar [Burton] from filing any motions or bankruptcy cases simply because [Burton] reopened the 1994 bankruptcy case to verify that [Burton's] student loan had been in fact discharged. [Burton] never received any automatic stays, or any stays as a result of reopening the 1994 case; and

> 2. Whether the court abused its discretion by entering orders against [Burton] in 1994 case without substantiated evidence from [ISAC]. [Burton's] 1994 Chapter 7 discharges all or some of [Burton's] loans to

[sic] [ISAC] pursuant to 11 U.S.C. § 523, a student loan or grant liability was discharged by entry of a general order. (If bankruptcy case was filed between May 28, 1991 and October 7, 1998). In 1994, [Burton] filed a Chapter 7 Bankruptcy Case. The 1994 Chapter 7 case discharged [Burton's] student loan debt; and

3. Whether the court abused its discretion by permitting ISAC without substantiate [sic] facts to intentionally and knowingly pursue [Burton] for an unsubstantiated debt. Since reopening this bankruptcy case, [Burton] has received correspondence from ISAC stating that [Burton] borrowed a total of $12,500 at 7% interest. However, [ISAC] has submitted a wage assignment to [Burton's] employer requesting $36,881.55. [Burton] would like to know how [ISAC] calculated the $36,881.55. [ISAC] has avoided answering [Burton] directly but rather misrepresenting facts to the court. ISAC also indicated that AFSA reported that five loans of [Burton's] were paid in full. [ISAC] has failed to submit any documents stating how it arrived at $36,881.55 that it had received as a judgment order and is currently receiving $602 wage deduction from my earned income.

(Appellant's Statement of the Issues at 3-4.)

As to the first issue, Burton characterizes the bankruptcy court's decision to bar her from filing any additional motions or petitions without prior leave of court as "simply" due to Burton's motion to reopen the 1994 case. That is only half of the story. Of course, the bar on future filings was precipitated by Burton's motion to reopen the 1994 case. The other, more important factor, however, is the bankruptcy court's finding that Burton abused the process of the court by filing seven bankruptcies since 1993. From our review of the bankruptcy court's docket, it appears that Burton filed not seven, but eight, bankruptcy petitions between 1993 and 2003, and has filed an additional petition during the pendency of

the instant appeal.[3] (Burton filed her latest bankruptcy petition one day after the bankruptcy court's twelve-month bar expired.) At least some of Burton's petitions appear to have been strategically timed to delay the collection attempts of creditors. Given these circumstances, we find no clear error with the bankruptcy court's finding that Burton has abused the court's process, and we hold that the bankruptcy court did not abuse its discretion in barring Burton from filing motions or petitions for a twelve-month period without prior leave of court.

With respect to the second issue, Burton appears to be seeking to enforce the order of discharge entered in her 1994 bankruptcy. She contends that her student loan debt was discharged by the entry of a general discharge because her bankruptcy petition was filed between May 28, 1991 and October 7, 1998. Burton cites no authority for this argument, and we believe it is based on a misunderstanding of information regarding defaulted student loans that was posted on a United States Department of Education Web site.[4] ISAC contends that the loan was not dischargeable, and

---

[3] The case numbers on the bankruptcy court's docket are as follows: 93-06153; 94-02838; 98-10097; 98-36315; 00-17249; 00-25223; 02-17116; 02-29650; and 04-26282. The cases were filed under various forms of Burton's name: "Annie Burton," "Annie Laura Burton," and "Annie Laura Janet Burton." Each of the dockets relating to those petitions contains the same social security number for Burton.

[4] Attached to Burton's emergency motion to reopen the case was a copy of certain information from the United States Department of Education's Web site. The Web page was entitled "Common Disputes Involving Defaulted Student Loans" and contained a section entitled "Bankruptcy," which stated: "Whether your loan was dischargeable depends largely on when you filed for bankruptcy, and how old your loan was at the time you filed." This statement, which is generally correct, and

cites 11 U.S.C. § 523, the section of the Bankruptcy Code entitled "Exceptions to Discharge." ISAC fails, though, to cite the version of § 523 that was in effect at the time Burton filed her 1994 bankruptcy petition. At that time, § 523 provided in relevant part:

> (a) A discharge under . . . this title does not discharge an individual debtor from any debt-
> . . .
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless-
>> (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (1990).

Evidently, the bankruptcy court did not enter a ruling in the 1994 proceeding that excepting the student loan debt from discharge would impose an undue hardship on Burton, and Burton does not contend that there was such an order. Therefore, the exception set forth in § 523(a)(8)(B) does not apply here. The § 523(a)(8)(A)

---

the chart that follows it, is based on the fact that the Bankruptcy Code provision concerning student loans was amended several times. Among other things, the chart indicates that "If you filed for bankruptcy . . . Between 5/28/1991 and 10/7/1998," "Your loan was only dischargeable if you had been required to make payments on the loan for at least **seven years** prior to the date you filed." The Web site has since been revised and does not currently contain the chart or the same language.

exception would apply only if the student loans at issue first became due on February 13, 1987 or earlier (more than 7 years before February 14, 1994, the date Burton filed her petition). According to the record, Burton's student loans first became due in 1988. Therefore, neither of the § 523(a)(8) exceptions to nondischargeability applies to the student loans, and the bankruptcy court was correct when it ruled that there were no grounds for Burton's motion seeking to enforce the discharge.[5]

Burton frames her "third" issue on appeal as whether the bankruptcy court "abused its discretion by permitting ISAC . . . to intentionally and knowingly pursue [Burton] for an unsubstantiated debt," and she challenges ISAC's calculation of what ISAC is owed. (Appellant's Statement of the Issues at 3.) The bankruptcy court, however, did not have before it the issues of whether ISAC should be able to garnish Burton's wages or whether the judgment amount was properly calculated. Those issues (properly) were not before the bankruptcy court; rather, they were before the <u>state</u> court in the wage garnishment proceedings. The bankruptcy court simply ruled on Burton's motion to reopen the bankruptcy proceeding to

---

[5] Given that the thrust of Burton's argument is now that the student loan debt was discharged, it is notable that while Burton made the argument in her briefs before the bankruptcy court, she mentioned nothing regarding the discharge in oral argument before the bankruptcy court on July 29, 2003. In fact, Burton stated: "I have no interest in not paying the federal government for the loan that they--that was granted to me back in 1988, five loans totaling $12,500." (Tr. at 5.) Instead, Burton argued that the amount sought by ISAC was three times the original amount of the loan (due to interest charges) and that she did not agree with the calculation.

enforce the order of discharge. As discussed <u>supra</u>, the court did not abuse its discretion by entering orders that in effect denied Burton's motion.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's orders of June 24 and July 29, 2003 are affirmed.

DATE:   November 4, 2004

ENTER:   _____
         John F. Grady, United States District Judge